

**FILED**

Dec 12 2016, 7:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah K. Smith
Sugar Creek Law
Thorntown, Indiana

ATTORNEYS FOR APPELLEE

Gregory K. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio Waters,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 12, 2016<br><br>Court of Appeals Case No.<br>06A05-1604-CR-863<br><br>Appeal from the Boone Circuit<br>Court<br><br>The Honorable J. Jeffrey Edens,<br>Judge<br><br>Trial Court Cause No.<br>06C01-0809-FA-244 |

**Vaidik, Chief Judge.**

# Case Summary

Antonio Waters pled guilty to criminal deviate conduct, battery resulting in bodily injury, and strangulation after assaulting a woman in 2008. The trial court entered a sentence of imprisonment to be followed by probation. The court imposed the standard probation conditions but said that it would consider sex-offender conditions at a date closer to Waters' release from prison. Waters did not object to this procedure. The day before Waters was released from prison in 2016, the court held a hearing and imposed twenty-six sex-offender conditions. Waters appeals the imposition of those conditions, arguing that holding the delayed second hearing violated Indiana law and that, in the alternative, seventeen of the twenty-six conditions are unnecessary and inappropriate.

We agree with the State that Waters waived any objection to the bifurcation of the sentencing hearing. However, probation conditions must be reasonably related to the defendant's treatment and the protection of public safety. Several of Waters' conditions fall short of this standard. Applying our Supreme Court's holding in *Bleeke v. Lemmon*, 6 N.E.3d 907 (Ind. 2014), we conclude that the trial court erred when it imposed four conditions that restrict Waters' contact with minors even though his offenses did not involve minors. Furthermore, condition 26, which restricts Waters' access to the internet, is overly broad in its application. Waters' internet restriction should be limited to websites that are related to his offenses—such as dating websites and websites with sexually explicit material—because the internet has become increasingly pervasive in our

daily lives, and Waters did not use the internet to commit his crimes. We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3]     In September 2008, Waters went with S.C. to a bar, where they both consumed several alcoholic drinks. They left the bar and went back to S.C.'s house. Upon entering her home, Waters punched S.C. in the face, knocking her to the ground. Waters locked the front door, straddled S.C. on the ground, and continued punching her in the face and abdomen. S.C. fought to get Waters off of her and repeatedly told him to stop. Waters removed S.C.'s pants and underwear and attempted to penetrate S.C. but failed. Instead, he forced his penis into her mouth. Waters also placed his hands around S.C.'s neck and squeezed so hard that he left marks. S.C. was eventually able to break free and run to a neighbor's house, where she called police. S.C. told police she thought Waters was going to kill her by strangulation. Waters was charged with attempted rape, criminal deviate conduct, criminal confinement, battery resulting in bodily injury, and strangulation.

[4]     In October 2009, Waters reached a plea agreement with the State and pled guilty to criminal deviate conduct, battery resulting in bodily injury, and strangulation. As a condition of the plea agreement, the State dismissed the charges for attempted rape and criminal confinement, and the parties agreed that sentencing would be at the trial court's discretion. In sentencing Waters, the court found several aggravating factors: Waters was discharged from the

military for "alcohol rehab failure," Waters was convicted of assaulting another female one month before attacking S.C., and Waters' crimes against S.C. occurred while he was on probation. Tr. p. 32. The court sentenced Waters to twenty-one-and-a-half years with sixteen years to be served at the Indiana Department of Correction ("DOC") and five-and-a-half years to be suspended to probation. The trial court prepared an Order of Probation, instructed Waters to review it with his attorney, and informed Waters that he would "be on probation while [he was] at the Department of Correction." *Id.* at 37. The court also told Waters it was imposing the standard conditions of probation but delaying the imposition of sex-offender conditions, which would be "addressed at a hearing to be held within thirty days of release." *Id.* Waters did not object to the trial court revisiting the issue of sex-offender conditions at a date closer to his release from prison.

[5] On March 22, 2016, the day before Waters was released, the court held a hearing to address his sex-offender conditions. Waters objected for the first time to the bifurcation of his sentencing, which he said violated Indiana law. The State noted that Waters waived this argument by failing to object when the court explained this procedure in 2009. The State further argued that the court properly bifurcated the sentencing hearing because it "wanted to see [Waters'] prison progress report to see what he had done at the DOC before specifying the terms of his probation" and that this delay was to Waters' benefit. Appellant's App. p. 49. The court acknowledged that Waters waived any objection to bifurcation and ruled that, in any event, the bifurcation was

permissible. The court imposed eight mandatory conditions (conditions 1 and 3–9) and eighteen discretionary conditions (conditions 10–27).

[6] Waters now appeals.

# Discussion and Decision

[7] Waters raises three issues on appeal. He makes two arguments as for why the 2016 hearing should not have been held. First, he notes that the trial court said at the 2009 hearing that he would be "on probation" while incarcerated and that the imposition of sex-offender conditions in 2016 therefore violated Indiana Code section 35-38-2-2.3(b), which requires that the conditions of probation be provided when a defendant is "placed on probation[.]" In the alternative, Waters asserts that the six-and-a-half-year delay in sentencing violated Indiana Criminal Procedure Rule 11, which provides that a defendant shall be sentenced within thirty days of conviction. In his third argument, Waters contends that even if the 2016 hearing was proper, the court erred when it imposed seventeen of the eighteen discretionary sex-offender conditions.

# I. March 2016 Hearing

[8] Waters' first argument is based on Indiana Code section 35-38-2-2.3(b), which provides, "When a person is placed **on probation**, the person shall be given a statement specifying: the conditions of probation . . . ." (emphasis added). Waters notes that the trial court told him during the 2009 hearing, "[Y]ou'll be **on probation** while you're at the Department of Correction." Tr. p. 37

(emphasis added).  Waters argues that the court placed him "on probation" in 2009 and that the subsequent imposition of the sex-offender conditions was therefore barred by Section 35-38-2-2.3(b).

[9] Because Waters did not make this objection at the 2009 hearing, it is waived. *See Bogner v. Bogner*, 29 N.E.3d 733 (Ind. 2015) (finding that a party waived his argument on appeal when he did not object to the trial court's decision to proceed summarily rather than to hold a full evidentiary hearing); *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539 (Ind. Ct. App. 2015) (holding that a party waived her procedural and substantive arguments regarding a motion to strike because she failed to object on either basis at trial and she specifically consented to the court's procedure), *trans. denied*.  Waiver notwithstanding, Waters' argument still fails.  When the trial court said that Waters would be "on probation" while incarcerated, it was simply referencing the well-established principle of Indiana law that a defendant can have his probation revoked prospectively and his suspended time imposed even before he begins the probation phase of his sentence.  *See Gardner v. State*, 678 N.E.2d 398, 401 (Ind. Ct. App. 1997); *Johnson v. State*, 606 N.E.2d 881, 882 (Ind. Ct. App. 1993); *Ashba v. State*, 570 N.E.2d 937, 940 (Ind. Ct. App. 1991), *aff'd*, 580 N.E.2d 244 (Ind. 1991).  The court was not saying that Waters' probation would begin while he was still incarcerated.  Probation is an **alternative** to incarceration. *McQueen v. State*, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007).  The court imposed all of Waters' probation conditions, including the sex-offender

conditions, before he was released to probation. There was no violation of Indiana Code section 35-38-2-2.3(b).[1]

[10] Waters next argues that even if there was no statutory violation, the March 2016 hearing violated Indiana Criminal Procedure Rule 11, which states that a defendant shall be sentenced within thirty days after conviction unless an extension is granted. As with his first argument, Waters waived this objection by failing to make it when the trial court said that it was delaying imposition of his sex-offender conditions to a date closer to his release from prison. When a defendant fails to object to the scheduling of a sentencing hearing for a day beyond the thirty-day deadline, "[h]e cannot later claim error on appeal." *Dudley v. State*, 480 N.E.2d 881, 905 (Ind. 1985) (quoting *Murphy v. State*, 447 N.E.2d 1148, 1149 (Ind. Ct. App. 1983)).

# II. Sex-Offender Probation Conditions

[11] Waters' last argument is that even if the 2016 hearing was properly held, the trial court should not have imposed seventeen of the discretionary sex-offender probation conditions. A review of his brief, however, reveals that he only challenges five of the conditions. The first four conditions explicitly restrict

---

[1] We acknowledge that this Court has explained that "a defendant's probationary period begins immediately after sentencing." *Baker v. State*, 894 N.E.2d 594, 597 (Ind. Ct. App. 2008); *see also Rosa v. State*, 832 N.E.2d 1119, 1122 (Ind. Ct. App. 2005); *Crump v. State*, 740 N.E.2d 564, 568 (Ind. Ct. App. 2000), *trans. denied*; *Ashley v. State*, 717 N.E.2d 927, 928 (Ind. Ct. App. 1999), *reh'g denied*. This does not mean that a defendant is "on probation" when he is incarcerated; it is simply another way of saying that a defendant's probation can be revoked prospectively while he is incarcerated, before he begins the probation phase of his sentence.

Waters' contact with minors: 17 (shall not engage in a sexual relationship with any person who has a child under the age of sixteen), 20 (shall have no contact with any person under the age of sixteen), 21 (shall not be present at schools, playgrounds, or day-care centers), and 22 (shall not participate in any activity that involves children under the age of eighteen). Waters contends that because his victim was over the age of eighteen, any conditions that restrict his contact with minors are unnecessary and inappropriate. Waters also challenges condition 26 (shall not access the internet without prior approval from his probation officer).[2]

[12] "Probation is a criminal sanction where a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment." *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013), *trans. denied*. A trial court has broad discretion to impose conditions of probation. *Hevner v. State*, 919 N.E.2d 109, 113 (Ind. 2010). The court's discretion is limited by the principle that the conditions imposed on the defendant must be reasonably related to the treatment of the defendant and the protection of public safety.

---

[2] Waters also contends that the trial court did not take into consideration the restrictions that the discretionary conditions placed on his constitutional rights. He states, "The constitutional rights restricted by the discretionary terms are broad and include free speech (term 26 relative to internet access) as well as the right to avoid self-incrimination (term 24 relative to polygraph testing); the right to travel and free access without state interference (term 16 which sets a curfew) . . . ." Appellant's Br. p. 24. He does not support these arguments with cogent reasoning or citations to relevant legal authority, so they are waived. *See* Ind. Appellate Rule 46(A)(8)(a); *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 795 (Ind. 2013). Waters also argues that the court failed to consider his behavior while incarcerated and the programs he completed in prison. Waters' brief, however, does nothing more than list the programs he completed (SOMM Medium Risk program, educational classes, anger management and relapse prevention classes, and 12-Steps Thinking for a Change Program). Waters does not explain what these programs are or how they are relevant to his probation conditions. Accordingly, this argument is also waived.

*Bratcher*, 999 N.E.2d at 873. We will not set aside conditions of probation unless the trial court abused its discretion. *Patton v. State*, 990 N.E.2d 511, 514 (Ind. Ct. App. 2013). "An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[13] As to the four conditions addressing minors—17, 20, 21, and 22—we agree with Waters. The State does not cite any authority that supports the imposition of these conditions in this case. Nor does it cite any evidence in the record that supports the presumption that Waters is a particular threat to minors. Our Supreme Court held in *Bleeke v. Lemmon* that because the defendant's sex crime was not against a minor and because there was no evidence that the defendant posed a threat to children, parole conditions that restricted his contact with children could not be viewed as "reasonably related to [his] successful reintegration into the community." 6 N.E.3d 907, 919 (Ind. 2014) (citations omitted). We note that Bleeke was on parole and Waters is on probation and that there is a difference between the two. Nevertheless, the Court's rationale can be applied to Waters: without any evidence that Waters poses a particular threat to children, conditions 17, 20, 21, and 22 cannot be said to be reasonably related to the treatment of the defendant and the protection of public safety. As such, the trial court erred when it imposed these four conditions.

[14] Waters also argues that the trial court erred when it imposed condition 26, which would restrict his access to the internet.[3] Waters' argument relies on *Bratcher*, where the defendant was convicted of child molesting and appealed, in part, the sex-offender conditions that restricted his access to the internet. This Court upheld the restrictions because they were not overbroad or vague, were reasonably related to attaining rehabilitation goals and protecting the public, and because "child molesters molest children to whom they have access." *Bratcher*, 999 N.E.2d at 879. Waters argues that *Bratcher* stands for the proposition that only defendants who are convicted of a sexual offense against a minor should have probation conditions that restrict their internet use. We did not reach that conclusion in *Bratcher* nor do we reach it in this case. Restricting someone's access to the internet does more than prevent them from contacting minors; it prevents them from contacting adults as well. However, we conclude that as it is currently imposed, condition 26 is overly broad in its restrictions.

[15] The internet has become increasingly pervasive in our daily lives; we use it to pay bills, order food, get directions, communicate with friends and colleagues, and file taxes, among other things. Other courts have recognized that a sex

---

[3] The condition states, "You shall not access the Internet or any other on-line service through use of a computer, cell phone, iPod, Xbox, Blackberry, personal digital assistant (PDA), pagers, Palm Pilots, televisions, or any other electronic device at any location (including your place of employment) without prior approval of your probation officer. This includes any Internet service provider, bulletin board system, e-mail system or any other public or private computer network. You shall not possess or use any data encryption technique or program." Appellant's App. p. 40.

offender who has no history of illegal internet use and did not use the internet as an instrument in his crime should not have a total ban on his internet access but rather a narrowly tailored restriction. *See, e.g.*, *United States v. Perazza-Mercado*, 553 F.3d 65, 72-73 (1st Cir. 2009) (holding that defendant did not use the internet to engage in sexual conduct with a minor and that a total ban on defendant's internet use at home was inconsistent with the goals of supervised release but a "narrowly tailored condition" would meet that goal); *United States v. Neeley*, 675 F. Supp. 2d 655, 658 (W.D. Va. 2009) (holding that a total ban on electronic devices was unreasonable for a child molester who violated probation because he did not use the internet to find his victims or violate probation), *aff'd* 420 F. App'x 228 (4th Cir. 2011); *State v. Cornell*, 146 A.3d 895, 910-11 (Vt. 2016) (holding that a child molester who did not use the computer to commit his crime should not have a ban on his internet use subject to the approval of his probation officer because such a restriction creates a "greater deprivation of liberty than is reasonably necessary to deter illegal conduct and protect the public") (citation omitted).

[16] Here, there is no evidence in the record to show that Waters used the internet to commit his attack on S.C. or that he has a history of illegal internet use. The trial court noted that Waters has "issues with respect to women," not issues with the internet. Tr. p. 33. In light of this observation, we acknowledge that the internet has become a popular medium for people to meet, and it is one way Waters could meet women. Modern technology affords the court the tools to limit Waters' access to certain dating websites and phone applications, as well

as websites with sexually explicit materials—restrictions that are reasonably related to his rehabilitation and the protection of public safety.[4] For example, the court can order that the parental controls on Waters' phone be turned on, can order that software be downloaded to Waters' computer to block specific websites, and can identify the category of websites to be blocked. On remand, the trial court should impose a narrower internet restriction that is more in line with Waters' conviction and "issues with women."

Affirmed in part, reversed in part, and remanded with instructions.

Baker, J., and Najam, J., concur.

---

[4] Condition 12 prohibits Waters from possessing any obscene matter as defined by statute and from visiting establishments like strip clubs, adult bookstores, and businesses that sell sexually explicit devices. The restrictions on Waters' internet access should complement condition 12 by restricting his access to view sexually explicit material online.